IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PACESETTER HOMES, INC., | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. GLR-20-2478 |
| GBL CUSTOM HOME DESIGN, INC., et al., | : | |
| | : | |
| Defendants. | | |

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant CRH Contracting, LLC's ("CRH") Motion Pursuant to Fed. R. Civ. P. 12(b)(6) to Dismiss Complaint Count II's Request for Statutory Damages and Attorneys' Fees and Counts III and IV in Their Entirety or, in the Alternative, for Partial Summary Judgment on Count II's Request for Statutory Damages and Attorneys' Fees (ECF No. 15); Defendant GBL Custom Home Design, Inc.'s ("GBL") Motion to Dismiss Plaintiff's Claims for Statutory Damages and Attorney's Fees, or in the Alternative, Motion for Partial Summary Judgment (ECF No. 16); and Defendant Garceau Realty Inc.'s ("Garceau") Motion to Dismiss Complaint Count V's Request for Statutory Damages and Attorneys' Fees and Counts VI and VII in Their Entirety or, in the Alternative, for Partial Summary Judgment on Count V's Request for Statutory Damages and Attorneys' Fees (ECF No. 19). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons outlined below, the Court will deny GBL's Motion and grant in part and deny in part CRH's and Garceau's Motions.

## I. BACKGROUND[1]

### A. **Factual Background**

Plaintiff Pacesetter Homes, Inc. ("Pacesetter") is a corporation engaged in the design and construction of residential homes. (Compl. ¶¶ 1, 14). Like Pacesetter, Defendant CRH is in the business of home design and construction. (Id. ¶ 75). Defendant GBL provides custom home design services. (Id. ¶ 54). Finally, Defendant Garceau is a realty company that provides real estate services. (Id. ¶ 81).

In 2017, Pacesetter completed architectural plans for a work entitled "Pacesetter Homes Charlotte Model" (the "Charlotte Model"). (Id. ¶ 11). Pacesetter subsequently filed the architectural plans for the Charlotte Model with the Baltimore County Building Plans Review in preparation to construct a residence at 4112 Baltimore Street in Baltimore, Maryland. (Id. ¶ 12). Pacesetter also listed the Charlotte Model on a Multiple Listing Website ("MLS") on December 7, 2017 (the "2017 Listing"). (Id. ¶ 13).

In December 2019, Pacesetter became aware of an MLS listing for a house under construction at 2808 New York Avenue in Baltimore that showed "substantially the same" plans as the Charlotte Model, as well as unauthorized copies of a floorplan and photographs of interior rooms that had appeared in Pacesetter's 2017 Listing. (Id. ¶¶ 16–17). According to the MLS listing, CRH was the owner of the property and Garceau was the "listing office." (Id. ¶ 16).

---

[1] Unless otherwise noted, the Court takes the following facts from Pacesetter's Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007)).

In January 2020, Pacesetter discovered listings for houses located at 5415 W. North Avenue and 5411 W. North Avenue in Baltimore that once again showed "substantially the same" plans as the Charlotte Model and included unauthorized copies of a floorplan and photographs that had appeared in Pacesetter's 2017 Listing. (Id. ¶¶ 18–19, 20–21). Once again, CRH was identified as the owner of the properties and Garceau was identified as the "listing office." (Id. ¶¶ 19, 21).

Pacesetter registered its copyright of the Charlotte Model on January 28, 2020. (Id. ¶ 8; see also Copyright Documents at 2, ECF No. 1-2).[2] On or about January 29, 2020, Pacesetter's counsel prepared and sent CRH a letter instructing it to cease and desist from infringing activities, including construction of the house at 2808 New York Avenue. (Compl. ¶ 22). Pacesetter did not receive a response. (Id. ¶ 23).

In July 2020, Pacesetter went to the offices of the Baltimore County Building Plans Review to inspect the original building plan filing for the 2808 New York Avenue property (the "New York Avenue Plans"). (Id. ¶ 24). The New York Avenue Plans were dated July 2019 and identified GBL as the designer. (Id. ¶ 26). According to Pacesetter, the New York Avenue Plans are "substantially the same" as the Charlotte Model. (Id. ¶ 27).

At some point thereafter, Pacesetter discovered a listing for a house located at 1827 Woodside Avenue in Lansdowne, Maryland, which once again showed "substantial similarities" to Pacesetter's Charlotte Model. (Id. ¶¶ 28–30). The listing indicated that the property was currently under construction, and once again identified the builder as CRH

---

[2] Page references to the Copyright Documentation refer to the numbers assigned by the Court's Case Management/Electronic Case Filing system.

3

and the listing office as Garceau. (Id. ¶ 29). Pacesetter later discovered that the property plans for 1827 Woodside Avenue were the same as the New York Avenue Plans. (Id. ¶ 32). Indeed, according to Pacesetter, "CRH had requested that the New York Avenue [P]lans be made 'Permanent Plans' which could be used for future houses embodying the same plans without the necessity of having the proposed plans further reviewed and approved." (Id.).

Pacesetter alleges that GBL "copied" and "substantially reproduced" the Charlotte Model to create the New York Avenue Plans and the plans for 1827 Woodside Avenue. (Id. ¶ 34). Pacesetter also alleges that CRH submitted these "copied" plans to the Baltimore County Building Plans Review for approval and that Garceau caused the homes to be listed on an MLS website. (Id. ¶¶ 40–43, 48–50). Pacesetter also alleges that CRH and Garceau used the Charlotte Model and photos that appeared in the 2017 Listing in the listings for the properties at 5411 W. North Avenue and 5415 W. North Avenue. (Id. ¶¶ 44–47, 51–52).

**B.   Procedural History**

Pacesetter commenced this action against CRH, GBL, and Garceau on August 27, 2020. (ECF No. 1). Pacesetter's seven-count Complaint alleges: copyright infringement in violation of the federal Copyright Act, 17 U.S.C. § 101 et seq., against all Defendants (Counts I, II, V); violation of the Maryland Deceptive Trade Practices Act ("MDTPA"), Md. Code Ann., Comm. L. ["CL"] § 13-301 et seq., against Defendants CRH and Garceau (Counts III and VI); and unfair competition against Defendants CRH and Garceau (Counts

IV, VII). (Compl. ¶¶ 89–136). Pacesetter seeks injunctive relief, actual damages, and statutory damages. (See, e.g., ¶¶ 95–99).

CRH and GBL filed their Motions on October 26, 2020. (ECF Nos. 15, 16). Garceau filed its Motion on November 5, 2020. (ECF No. 19). Pacesetter filed its Oppositions to CRH's and GBL's Motions on November 9, 2020, (ECF Nos. 20, 21), followed by its Opposition to Garceau's Motion on November 19, 2020, (ECF No. 22). CRH and GBL filed their Replies on November 23, 2020. (ECF No. 23, 24). Garceau filed its Reply on December 7, 2020. (ECF No. 28).

## II.   DISCUSSION

**A.   Standard of Review**

The purpose of a Rule 12(b)(6) motion is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is

5

not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the Court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**B.     Analysis**

    **1.     Statutory Damages & Attorneys' Fees (Counts I, II, and V)**

Defendants move to dismiss—or, alternatively, for judgment in their favor on—Pacesetter's request for statutory damages and attorneys' fees in Counts I, II, and V of its Complaint. Pacesetter responds that its requests for statutory damages and attorneys' fees are permissible at this stage. For the reasons explained below, the Court agrees with Pacesetter.

The Copyright Act permits a copyright owner to elect, before final judgment, "to recover, instead of actual damages and profits, an award of statutory damages" for infringement. 17 U.S.C. § 504(c)(1). Increased statutory damages may be available in the

case of willful infringement, if proven. Id. § 504(c)(2). Section 505 grants the Court discretion to "allow the recovery of full costs," including "a reasonable attorney's fee," to the prevailing party in a copyright infringement action. 17 U.S.C. § 505. But statutory damages and attorneys' fees are not available in all cases. Rather, under the Act's plain terms:

> [N]o award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for—
>
> (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or
>
> (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

17 U.S.C. § 412. In other words, for published works, statutory damages and attorneys' fees are prohibited where a plaintiff does not register its copyright prior to the alleged infringement or within three months of first publication. See LTVN Holdings, LLC v. Odeh, No. CCB-09-789, 2010 WL 2612690, at *3 (D.Md. June 25, 2010) (citing 17 U.S.C. § 412).

Here, Pacesetter alleges that the home at 4112 Baltimore Street, which was constructed using the Charlotte Model, was sold on or about January 20, 2019. (Compl. ¶ 14). Under the Copyright Act, "publication" is defined as "the distribution of copies . . . of a work to the public by sale or other transfer of ownership." 17 U.S.C. § 101. Thus, Pacesetter first published the Charlotte Model on or about January 20, 2019. (See Mem. Opp'n Mot. Pursuant Fed.R.Civ.P. 12(b)(6) Dismiss Compl. Count II's Req.

7

Statutory Damages & Att'ys' Fees & Counts III & IV Their Entirety Alt. Partial Summ. J. Count II's Req. Statutory Damages & Att'ys' Fees ["Opp'n to CRH Mot."] at 2, ECF No. 21 (confirming "the publication date [for the Charlotte Model] was already provided in Complaint ¶ 14")). Pacesetter also alleges that its copyright registration for the Charlotte Model has an effective date of January 28, 2020. (Compl. ¶ 8; see also Copyright Documentation at 2). Thus, because Pacesetter did not copyright the Charlotte Model within three months of the date of its first publication, statutory damages and attorneys' fees are prohibited for any infringements that took place before the effective copyright date.

The question remains, however, whether Pacesetter may recover statutory damages and attorneys' fees for the acts of infringement that took place after the effective copyright registration date. On this subject, many courts have held that Section 412(2) should be read to bar statutory damages for post-registration infringement "when the same defendant infringe[s] the same work in the same fashion before and after registration." S. Credentialing Support Servs., L.L.C. v. Hammond Surgical Hosp., L.L.C., 946 F.3d 780, 785 (5th Cir. 2020) (citation omitted); see also Johnson v. Jones, 149 F.3d 494, 506 (6th Cir. 1998) (compiling cases finding that infringement "commences" for the purposes of Section 412 when the first act in a series of acts constituting continuing infringement occurs). The United States Court of Appeals for the Fourth Circuit has adopted this approach, noting that "[t]his interpretation makes sense because it would be peculiar if not inaccurate to use the word 'commenced' to describe a single act rather than the first in a group of acts." Bouchat v. Bon-Ton Dep't Stores, Inc., 506 F.3d 315, 330 (4th Cir. 2007)

8

(internal quotation marks and citations omitted). Accordingly, the Fourth Circuit has upheld a district court's denial of statutory damages for post-registration infringement where the acts of infringement commenced prior to the effective copyright registration date. See id. at 332. In doing so, the court explained that allowing a copyright holder to obtain the extraordinary remedy of statutory damages for acts that occurred after he registered his copyright would discourage, rather than promote, the swift registration of creative works. Id. at 331–32.

Consistent with this holding, Defendants assert that Pacesetter is not entitled to statutory damages or attorneys' fees for the alleged post-registration acts because they are part of a "continuing infringement" that commenced prior to the effective copyright registration date. (See Mem. Law Supp. Mot. Pursuant Fed.R.Civ.P. 12(b)(6) Dismiss Compl. Count II's Req. Statutory Damages & Att'ys' Fees & Counts III & IV Their Entirety Alt. Partial Summ. J. Count II's Req. Statutory Damages & Att'ys' Fees ["CRH Mot."] at 8, ECF No. 15-1). Defendants contend that, according to the Complaint, the infringement began in July 2019 when CRH submitted the New York Avenue Plans to the Baltimore County Building Plans Review. (Id. (citing Compl. ¶¶ 24–27, 40, 67)). Defendants further argue that Pacesetter's claims amount to a "continuing infringement" because Defendants used a single set of architectural plans to build multiple, similar houses over a relatively short period of time. (Id. (citing Compl. ¶¶ 60–69, 101–03)). Thus, because infringement "commences" for purposes of Section 412 "'when the first act in a series of acts constituting continuing infringement occurs,'" Bouchat, 506 F.3d at 330 (quoting Johnson, 149 F.3d at 506), the infringement here commenced before the effective

copyright registration date on January 28, 2020, and Pacesetter cannot recover statutory damages or attorneys' fees for any post-registration acts.

Pacesetter responds that its Complaint does not intend to state a claim for "continuing infringement," but rather expressly alleges that "[e]ach infringement of Plaintiff's rights in and to the [Charlotte Model] constitutes a separate and distinct act of infringement." (Compl. ¶ 105). Pacesetter also explains that courts have found that gaps in infringing acts, changes in the nature of the infringement, or some other indicator of a conscious decision to start infringement anew will produce separate infringements that "commence" at different times for the purpose of Section 412. For example, in Rosen v. NetFronts, Inc., No. CV 12-658 CAS, 2013 WL 3467205 (C.D.Cal. July 9, 2013), the court found that the doctrine of continuing infringement did not cover a subsequent act of infringement where the infringer ceased displaying certain copied photos on his website before rebuilding his website and displaying the copied photos again, with copyright registration occurring in the interim. Id. at *2–3. Pacesetter argues that, like the infringements in Rosen, the construction of each house is a distinct project that could be considered a separate act of infringement for the purposes of Section 412.

At bottom, the question of whether Defendants' acts form a single act of continuing infringement or constitute separate acts of infringement cannot be answered without facts that the parties will develop during discovery. See Bouchat, 506 F.3d at 324 (analyzing whether infringement "commenced" under Section 412 on summary judgment); Johnson, 149 F.3d at 496 (same). As such, it would be inappropriate at this time to foreclose Pacesetter's request for statutory damages and attorneys' fees based upon a finding that the

infringement was a "continuing infringement" that commenced before the effective copyright registration date. Accordingly, the Court declines to treat Defendants' Motions as partial motions for summary judgment on the issue of statutory damages and attorneys' fees. Additionally, Defendants' request to dismiss Pacesetter's claims for statutory damages and attorneys' fees will be denied.

### 2. Maryland Deceptive Trade Practices Act (Counts III & VI)

Defendants CRH and Garceau argue that Pacesetter's MDTPA claims should be dismissed because Pacesetter is not a consumer under the statute. For the reasons explained below, the Court agrees.

The MDTPA provides: "A person may not engage in any unfair or deceptive trade practice . . . in . . . [t]he sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services." CL § 13-303. Although the MDTPA authorizes private causes of action against violators, id. § 13-408(a), its remedies are limited to "consumers" purchasing "consumer" goods or services, see Fare Deals Ltd. v. World Choice Travel.Com, Inc., 180 F.Supp.2d 678, 692 (D.Md. 2001) (citing Boatel Indus., Inc. v. Hester, 550 A.2d 389, 399 (Md.Ct.Spec.App. 1988)). The term "consumer" is defined as "an actual or prospective purchaser, lessee, or recipient of consumer goods, consumer services, consumer realty, or consumer credit." CL § 13-101(c)(1). "Consumer goods" are goods that are "primarily for personal, household, family, or agricultural purposes." Id. § 13-101(d)(1).

Pacesetter does not provide any facts suggesting it meets the definition of a "consumer" for the purposes of the MDTPA. Pacesetter is a corporate entity that designs

11

and constructs homes. (See Compl. ¶¶ 1, 8–15). Pacesetter does not allege that it is a "purchaser, lessee, or recipient" of any "personal, household, family, or agricultural" good. CL §§ 13-101(c)(1), (d)(1). For these reasons, Pacesetter is not entitled to any remedy under the MDTPA. See, e.g., JFJ Toys, Inc. v. Sears Holdings Corp., 237 F.Supp.3d 311, 342 (D.Md. 2017) (dismissal of unfair trade practices claims where plaintiff was "corporate commercial entity"); Fare Deals, 180 F.Supp.2d at 692 (holding trademark owner, seeking relief for misuse of its name, was not a "consumer" under Maryland law); Boatel, 550 A.2d at 399 (finding party was not a "consumer" because he purchased boat for commercial purposes).

In addition, Pacesetter admits that CRH is its "direct competitor[ ] in the field of home design and construction." (Compl. ¶ 75). This Court has expressly held that corporate competitors like Pacesetter lack standing and cannot state a legally viable claim under the MDTPA because they do not qualify as "consumers." Penn-Plax, Inc. v. L. Schultz, Inc., 988 F.Supp. 906, 909–11 (D.Md. 1997); see, e.g., Putt-Putt, LLC v. 416 Constant Friendship, LLC, 936 F.Supp.2d 648, 660 (D.Md. 2013) (dismissing MDTPA claim where plaintiff was "not a consumer" of defendant's goods and services, but a competitor and therefore lacked standing); Custom Direct v. Wynwyn, Inc., No. RBD-09-2348, 2010 WL 1794248, at *2 (D.Md. May 4, 2010) (dismissing MDTPA count in copyright action for competitor plaintiff's lack of standing); see also Scotch Whisky Ass'n v. Majestic Distilling Co., 958 F.2d 594, 597 n.9 (4th Cir. 1992) ("readily" eliminating MDTPA claim because plaintiff, a trade association, did "not come within [the act's] definition of consumer" (citations omitted)).

Pacesetter does not dispute that it lacks standing to bring a claim against CRH. Still, Pacesetter argues that its MDTCA claim against Garceau may proceed because Garceau is engaged in the sale of "commercial realty." (See Mem. Opp'n Mot. Dismiss Compl. Count V's Req. Statutory Damages & Att'ys' Fees & Counts VI & VII Their Entirety Alt. Partial Summ. J. Count V's Req. Statutory Damages & Att'ys' Fees ["Opp'n to Garceau Mot."] at 14–15, ECF No. 22). This argument fails for two reasons. First, the MDTCA does not apply to real estate brokers. See CL § 13-104 ("This title does not apply to: (1) . . . real estate broker[s], associate real estate broker[s], or real estate salesperson[s] . . . ."). Pacesetter plainly alleges that Garceau is a provider of real estate services that engages in the sale of real property. (See, e.g., Compl. ¶¶ 16, 19, 21, 81, 122). Thus, the MDTCA does not apply to Garceau. Second, even if Garceau were not exempted, Pacesetter's claim would nonetheless fail because it does not allege that it is a "purchaser, lessee, or recipient" of consumer realty. See CL § 13-101(c)(1).

In sum, the MDTCA exists "to provide minimum standards for the protection of consumers." Id. § 13-103(a). Indeed, as the Maryland Court of Appeals has explained, the statute is "less concerned with protecting businessmen." Boatel, 550 A.2d at 399. Pacesetter alleges that it is a corporate entity and does not provide any facts suggesting that it qualifies as a "consumer" under Maryland law. Accordingly, Pacesetter's MDTCA claims must be dismissed.

### 3. Unfair Competition (Counts IV & VII)

Defendants CRH and Garceau next argue that Pacesetter's unfair competition claims must be dismissed because they are preempted by Section 301(a) of the Copyright Act. For the reasons explained below, the Court agrees.

The Fourth Circuit has articulated a two-part test for determining when state law claims are preempted by federal copyright law. See U.S. ex rel. Berge v. Bd. Trs. Univ. Ala., 104 F.3d 1453, 1463 (4th Cir. 1997). First, the work must fall "within the scope of the subject-matter of copyright as specified in 17 U.S.C. §§ 102, 103." Id. (internal quotation marks and citation omitted). Here, there is no dispute that the Charlotte Model is an "original work[ ] of authorship fixed in any tangible medium of expression" that falls within the subject matter of copyright as specified in Sections 102 and 103.

As for the second prong, for preemption to apply, "the rights granted under state law must be equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106." Berge, 104 F.3d at 1463 (internal quotation marks and citation omitted). Section 106 grants copyright owners the exclusive right to: "(1) reproduce the work; (2) prepare derivative works based on the work; (3) distribute copies of the work; (4) perform the work publicly; and (5) display the work publicly." See Fischer v. Viacom Int'l, Inc., 115 F.Supp.2d 535, 541 n.4 (D.Md. 2000). Therefore, a state law right that is infringed by "the mere act of reproduction, performance, distribution, or display" will be preempted by the Copyright Act. See id. at 541 (quoting Balt. Orioles, Inc. v. Major League Baseball Players Ass'n, 805 F.2d 663, 677 (7th Cir. 1986)).

14

The Fourth Circuit has noted that a state law claim avoids preemption when it contains an "'extra element' that changes the nature of the state law action so that it is 'qualitatively different from a copyright infringement claim.'" Berge, 104 F.3d at 1463 (quoting Rosciszewski v. Arete Assocs., Inc., 1 F.3d 225, 229–30 (4th Cir. 1993)). Consistent with this principle, in Trandes Corp. v. Guy F. Atkinson Co., 996 F.2d 655 (4th Cir. 1993), the Fourth Circuit explained that state law actions which "incorporate elements beyond those necessary to prove copyright infringement" and "regulate conduct qualitatively different from the conduct governed by federal copyright law" are not preempted. Id. at 659 (citations omitted).

For its part, Pacesetter correctly notes that state law claims for unfair competition are not per se preempted by the Copyright Act. See Lowry's Reports, Inc. v. Legg Mason, Inc., 271 F.Supp.2d 737, 756 (D.Md. 2003) ("The Copyright Act may not preempt every state-law claim of unfair competition."). However, as this Court has held:

> The distinction between those unfair competition claims that are not preempted and those that are is that "claims based upon breaches of confidential relationships, breaches of fiduciary duty and trade secrets have been held to satisfy the extra-element test, whereas claims of misappropriation and unfair competition based solely on the copying of the plaintiff's protected expression fail that test."

Sinclair Broadcast Grp., Inc. v. Colour Basis, LLC, No. CCB-14-2614, 2016 WL 3541204, at *9 (D.Md. June 29, 2016) (quoting Costar Grp. Inc. v. Loopnet, Inc., 164 F.Supp.2d 688, 713 (D.Md. 2001)). In other words, in order to find that an unfair competition claim contains an "extra element" beyond a federal copyright claim, there must typically be a factual allegation of deception based on the parties' relationship that goes above and

15

beyond mere use of copyrighted work. See Sinclair, 2016 WL 3541204, at *8–9. For example, in Sinclair Broadcast Group, Inc. v. Colour Basis, LLC, No. CCB-14-2614, 2016 WL 3541204 (D.Md. June 29, 2016), the Court found that an unfair competition claim was not preempted when it focused "not just on the alleged unauthorized copying and printing" of a work but also on deception "allegedly used [by the defendant] to persuade" the claimant to create the work in the first place. Id. at *9. Likewise, in Victor Stanley, Inc. v. Creative Pipe, Inc., No. MJG-06-2662, 2011 WL 4596043 (D.Md. 2011), the Court found no preemption where, in addition to infringing plaintiff's copyrighted site furnishing designs, defendants falsely claimed to represent plaintiff and sold the copies under a trade name designed as a purposeful and targeted insult to plaintiff. See id. at *1.

The holding in Costar Group, Inc. v. Loopnet, Inc., 164 F.Supp.2d 688 (D.Md. 2001), is also illustrative on this point. In that case, the plaintiff argued that its unfair competition claim was not preempted because the defendant "did not merely copy its photographs, but passed them off as its own photographs," causing a "separate injury" in that users believed the defendant's work was equal to that of plaintiff's or that defendant had plaintiff's authorization to use the images. Id. at 714. The Court rejected this argument, finding that, at its core, "the unauthorized copying of [plaintiff's] photographs" was the basis for both the copyright infringement claim and unfair competition claim. Id. Accordingly, the Court found that the plaintiff's unfair competition claim did not satisfy the "extra-element" test and was therefore preempted by the Copyright Act. Id.

Turning to the present case, Pacesetter's state law claims for unfair competition are premised on allegations that CRH and Garceau engaged "fraud, deceit, and trickery" by

16

"selling and offering to sell real property based upon [the Charlotte Model]" despite having "no legal rights therein." (Compl. ¶¶ 117–118, 135–36). Further, Pacesetter alleges that CRH "falsely represent[ed]" the Charlotte Model "as its own," which "unfairly usurped [Pacesetter's] creativity." (Id. ¶¶ 77, 117). Relatedly, Pacesetter alleges that the Charlotte Model was the result of Pacesetter's "valued reputation" and "its own ingenuity and creativeness," and that CRH "opportunistically" "cut corners" by copying it. (Id. ¶¶ 76–80).

As a preliminary matter, a plaintiff cannot save an action from preemption by alleging elements like "awareness or intent" to deceive, "which alter 'the action's scope but not its nature.'" Rosciszewski, 1 F.3d at 230 (quoting Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 717 (2d Cir. 1992)). And despite its vague complaints of fraud, deceit, and trickery, Pacesetter fails to allege any facts suggesting that CRH or Garceau actually engaged in any deceptive conduct above and beyond the allegations that make up its claim for copyright infringement. Setting aside these bare-bones allegations, Pacesetter's unfair competition claims amount to nothing more than an assertion that CRH and Garceau copied, displayed, and used the Charlotte Model without the legal authority to do so. This is precisely the type of misconduct that copyright laws are designed to guard against. See Fischer, 115 F.Supp.2d at 541 n.4. Pacesetter's unfair competition claims do not satisfy the "extra-element" test and are therefore preempted under the Copyright Act. Accordingly, the Court will dismiss Pacesetter's claims for unfair competition.

## III. CONCLUSION

For the foregoing reasons, the Court will deny GBL's Motion (ECF No. 16) and grant in part and deny in part CRH's and Garceau's Motions (ECF Nos. 15, 19). A separate Order follows.

Entered this 17th day of August, 2021.

/s/
George L. Russell, III
United States District Judge